# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2008

Charles R. Fulbruge III
Clerk

———————

No. 06-10605

———————

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DONALD STEVEN LOONEY; MARY BETH LOONEY

Defendants - Appellants

———————

Appeals from the United States District Court
for the Northern District of Texas

———————

Before REAVLEY, JOLLY, and GARZA, Circuit Judges.

PER CURIAM:

Donald and Mary Beth Looney, husband and wife, were convicted in a jury trial for conspiracy and possession of methamphetamine with intent to distribute and for possessing firearms in furtherance of drug-trafficking crimes. Both were sentenced to 548 months in prison. Mr. Looney appeals his conviction on grounds of the district court's denial of his motion to suppress. Ms. Looney appeals her sentence; she is effectively serving a life sentence for her first conviction. For the reasons that follow, we AFFIRM the conviction of Mr. Looney. We AFFIRM the sentence of Ms. Looney.

I.

Mr. Looney argues that the district court erroneously denied his motion to suppress. In his motion to suppress, Mr. Looney alleged that the evidence seized from his home pursuant to a search warrant (methamphetamine and four guns) must be suppressed because the search warrant was obtained with false or misleading information.

In Franks v. Delaware, the Supreme Court set out the legal principles that govern how courts are to address a defendant's allegations of false statements in warrant affidavits:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. 154, 155-56 (1978).

However, even if the defendant proves that one or more statements in the affidavit are false, and yet fails to prove that the affiant deliberately or recklessly included such false information in the affidavit, the court may consider the entire affidavit -- without any excision -- under the good-faith exception to the exclusionary rule. See United States v. Cavazos, 288 F.3d 706, 710 (5th Cir. 2002) ("After several hearings ... the district court found no evidence to suggest that the officers had deliberately or recklessly provided the

false information. Having made these findings, the good-faith exception would have allowed the court to consider the entire affidavit, and the analysis should have ended there.") "The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded." Id. at 709. "If the good-faith exception applies, we need not reach the question of probable cause." Id. at 710 (brackets, internal quotation marks and citation omitted).

In his brief before this court, Mr. Looney points to eight alleged "factual misstatements" in the search warrant affidavit. He contends that these eight statements should be excised from the affidavit, either because they are false and were made intentionally or with a reckless disregard for the truth, or because they are based on information supplied by a witness whose credibility and basis for knowledge are not established in the affidavit. He contends further that, once these statements are excised, the remaining portion of the affidavit is insufficient to provide probable cause for issuance of the warrant.

In his motion to suppress, however, and at the suppression hearing as well, Mr. Looney identified only one alleged false statement in the affidavit. He did not allege in his motion, nor did he argue at the hearing, that the affidavit included the other allegedly false statements that are now itemized in his brief; nor did he contend in the district court, as he now contends, that the affidavit was based on information supplied by a witness whose credibility and basis for knowledge were not established on the face of the affidavit. This court has held that "failure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal." United States v. Pope, 467 F.3d 912, 918-19 (5th Cir. 2006).

The district court found that although Mr. Looney had shown by a preponderance of the evidence that the single statement identified in his motion

to suppress was false or misleading, he had failed to prove that the affiant officer had acted deliberately or with reckless disregard for the truth when he included that statement in the affidavit. The court stated that, based on the officer's "testimony and his forthright and honest demeanor on cross examination," the officer's "testimony regarding his intentions is credible and that any error ... was inadvertent and not deliberate or reckless." Once it concluded that Mr. Looney had failed to meet his burden of proving that the affiant officer acted deliberately or with reckless disregard for the truth, the district court held that the good-faith exception applied. Thus, the district court examined the entire affidavit, including the challenged statement, and concluded that it established probable cause to search Mr. Looney's residence.

The district court's factual finding that the affiant officer did not deliberately or recklessly include the false statement in the affidavit cannot be disturbed unless it is clearly erroneous. United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003). Based on our review of the record, we find no basis to overturn the district court's assessment.

Furthermore, assuming that Mr. Looney did not waive his argument regarding the other statements in the affidavit that he challenges for the first time on appeal, the district court did not plainly err by failing, sua sponte, to excise those statements. See Pope, 467 F.3d at 919 n.20 (holding that, assuming suppression argument not waived, there was no plain error). Mr. Looney presented no evidence at the suppression hearing regarding the alleged falsity of the statements or the credibility of the witness who supplied information to the affiant officer. In short, the district court did not err in determining that the requirements of the Fourth Amendment were met for the search of Mr. Looney's residence, based on the challenged affidavit.

We will now turn to address the sentencing issues raised by Ms. Looney.

II.

As we have previously noted, Ms. Looney was sentenced to 548 months (45 years) of imprisonment. Although the record indicates she was not spotless, she nevertheless had no previous convictions. Yet, because she was 53 years old at the time of sentencing, she was given effectively a life sentence; if she can do her part and finish her sentence, she will be about ninety-eight years old when she is released to the unimprisoned world once again. The judge, however, had little discretion in imposing this sentence. As her counsel observed at sentencing, the district court's sentencing discretion was severely limited. Because of the way the indictment was stacked by the prosecutor, Ms. Looney was subject to mandatory minimum terms of imprisonment for forty years (ten years for the drug conspiracy and possession with intent to distribute counts, five consecutive years for the first gun count, and twenty-five consecutive years for the second gun count). Although thirty years of her sentence can be attributed to possessing guns in furtherance of her methamphetamine dealing, there is no evidence that Ms. Looney brought a gun with her to any drug deal, that she ever used one of the guns, or that the guns ever left the house. Because of our serious concerns regarding the harshness of Ms. Looney's sentence, we have very carefully considered Ms. Looney's arguments, which we now turn to address.

A.

Ms. Looney contends that her sentence is procedurally unreasonable for two reasons. She argues first that the district court erroneously thought the Guidelines were mandatory. But the district court, in its written statement of reasons, stated that it recognized that the Guidelines were "advisory only."

Next, Ms. Looney contends that the district court's oral statement of reasons was not sufficient. The only argument Ms. Looney made before the district court concerning her sentence length, however, was a request for the district court to take into consideration the fact that she had many people who

were concerned about her and supported her. The district court acknowledged that fact before announcing the sentence, which was at the low end of the Guideline range. The district court did not need to say more than it did. As the Supreme Court recognized in Rita v. United States:

> Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3[5]53(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a)—that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way—or argues for departure, the judge normally need say no more.

127 S. Ct. 2456, 2468 (2007).

Here, the district court apparently thought Ms. Looney's case was typical and that she was entitled to a within-Guideline sentence. In the words of Rita, the judge "rest[ed] his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence." Id. And since Ms. Looney did not make any argument to the contrary, the district court did not need to explain why it did not find a non-Guideline sentence necessary.

### B.

Ms. Looney argues next that her 548-month sentence—effectively a life-sentence for an individual in her fifties with no prior convictions—violates the Eighth Amendment's prohibition against "cruel and unusual" punishments because it is "grossly disproportionate" to the crime she committed.

We have previously recognized, following guidance from the Supreme Court, that successful Eighth Amendment challenges to prison-term lengths will be rare. United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997). And while a life sentence for a crime involving no actual violence might be considered a

disproportionate punishment, it is not "grossly disproportionate" as that term is understood under current law. See, e.g., id. at 942-44 (upholding a 438-month sentence for defendants who committed drug and gun offenses); United States v. Hungerford, 465 F.3d 1113, 1118 (9th Cir. 2006) (upholding a 159-year sentence for a defendant who took part in a series of robberies); cf. Harmelin v. Michigan, 501 U.S. 957, 994 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense . . . ."). In sum, although we consider Ms. Looney's sentence to be unduly harsh for someone who has no previous conviction of any sort, "[i]t is for Congress to ameliorate the result of application of [statutory mandatory minimum sentences] if it deems it too harsh." United States v. Casiano, 113 F.3d 420, 426 (3d Cir. 1997).

## C.

Ms. Looney's final contention is that either count three or four of the indictment should have been dismissed and that the district court erred by sentencing her for both. Both counts charged Ms. Looney with violating 18 U.S.C. § 924(c), which makes it a crime to possess a gun in furtherance of a drug trafficking offense. Specifically, count three of the indictment alleged that Ms. Looney possessed two guns in furtherance of the offense of conspiracy to possess with the intent to distribute methamphetamine. Count four alleged that Ms. Looney possessed two different guns in furtherance of the offense of possession with the intent to distribute methamphetamine. The indictment charged possession of guns with these two separate predicate offenses. One predicate offense is conspiracy to possess with the intent to distribute methamphetamine. The other predicate offense, possessing with the intent to distribute methamphetamine, charged facts also charged in the conspiracy.

Ms. Looney argues that she cannot be sentenced for two § 924(c) gun offenses when one of the predicate offenses is conspiracy to commit crime X and

the other offense is just crime X. But that argument is foreclosed by United States v. Privette, where we held:

> Multiple sentences under § 924(c) must be based upon the number of drug trafficking crimes in which firearms were used. Drug trafficking crimes separated by the measure of the double jeopardy clause can each support § 924(c) convictions. A conspiracy and its target crimes are separate offenses for these purposes. [The defendant's] conviction of conspiracy and his conviction of possession with intent to distribute could each support a separate § 924(c) conviction and sentence.

947 F.2d 1259, 1262 (5th Cir. 1991) (internal citations omitted). Thus, the district court did not err in confecting its sentence.

D.

We have carefully considered all of Ms. Looney's challenges to her sentence and can find no basis upon which to vacate any portion of it. As we have noted, Ms. Looney was subject to a mandatory minimum sentence of forty years -- essentially determined by Congress. Although Congress established the mandatory minimum terms of imprisonment, and further provided that the firearms counts must be served consecutively, it is the prosecutor's charging decision that is largely responsible for Ms. Looney's ultimate sentence. Instead of charging Ms. Looney with two separate § 924(c) offenses, the prosecutor might well have charged her with only one, which would have avoided triggering the twenty-five-year mandatory, consecutive sentence for the second firearm count. The prosecutors also could have chosen to charge Ms. Looney with the drug offenses and requested a two-level enhancement under the Sentencing Guidelines based on the involvement of firearms with the offenses. Instead, the prosecutor exercised his discretion -- rather poorly we think -- to charge her with counts that would provide for what is, in effect, a life sentence for Ms. Looney.

We do not question the authority -- or the wisdom -- of Congress's decision to punish severely individuals who possess weapons in furtherance of drug-

dealing. Nor do we in any way minimize the seriousness of Ms. Looney's offenses. Moreover, there is nothing legally improper about the prosecutors' charging decisions with respect to Ms. Looney, nor about the practice of confecting an indictment that would provide for the largest mandatory sentence. Nevertheless, we must observe that the power to use § 924(c) offenses, with their mandatory minimum consecutive sentences, is a potent weapon in the hands of the prosecutors, not only to impose extended sentences; it is also a powerful weapon that can be abused to force guilty pleas under the threat of an astonishingly long sentence. For example, a defendant who sincerely and fervently believes in his innocence, and who has witnesses and other evidence that support his claim of innocence, could easily be pressured into pleading guilty under a plea agreement that eliminates the threat -- rather than face the possibility of life imprisonment based on a prosecutor's design of an indictment that charges and stacks mandatory minimum consecutive sentences. We merely observe that the possibility of abuse is present whenever prosecutors have virtually unlimited charging discretion and Congress has authorized mandatory, consecutive sentences. We trust that the prosecutors in this Circuit are aware of the potency of this weapon and its potential for abuse, and that they exercise extreme caution in their use of it, all in the interests of justice and fairness.

III.

For the foregoing reasons, Mr. Looney's conviction and Ms. Looney's sentence are

AFFIRMED.